UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRANDON HEITMANN,

Debtor.
_____________________________________/

Chapter 7
Case No. 24-41956-MAR
Hon. Mark A. Randon

RATNESH MEHRA,
Plaintiff,
v.
BRANDON HEITMANN,

Defendant.
_____________________________________/

Adv. Pro. No. 25-04093-mar

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ratnesh Mehra ("Mehra" or the "Plaintiff"), by and through his attorneys, OSIPOV BIGELMAN, P.C., and pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, states as follows:

1. The Plaintiff moves for summary judgment in his favor on Count 1 (11 U.S.C. § 523(a)(2)(A)) and Count 3 (11 U.S.C. § 523(a)(6)) of the Complaint for the reasons set forth in the attached Brief in Support.

2. The Plaintiff is not proceeding on Count 2 (11 U.S.C. § 523(a)(4)), as stipulated on the record.

3. There is no genuine issue of material fact, and the Plaintiff is entitled to judgment as a matter of law (a) awarding him a money judgment against

Defendant Brandon Heitmann in the amount of $421,670.00, and (b) determining that the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

4. Concurrence in the relief requested was sought and was not received.

WHEREFORE, the Plaintiff respectfully requests that this Court grant summary judgment in his favor on Counts 1 and 3 of the Complaint and enter a judgment that (a) awards the Plaintiff a money judgment against the Defendant in the amount of $421,670.00, and (b) determines that the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6), together with such other relief as the Court deems just.

Date: November 16, 2026

Respectfully submitted,
**OSIPOV BIGELMAN, P.C.**

/s/ Jeffrey H. Bigelman
JEFFREY H. BIGELMAN (P61755)
Attorneys for Plaintiff
20700 Civic Center Drive, Ste. 420
Southfield, MI 48076
Tel: (248) 663-1800
Fax: (248) 663-1801
jhb@osbig.com

# Exhibit 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRANDON HEITMANN,

Debtor.
_____________________________________/

Chapter 7
Case No. 24-41956-MAR
Hon. Mark A. Randon

RATNESH MEHRA,
Plaintiff,
v.
BRANDON HEITMANN,

Defendant.
_____________________________________/

Adv. Pro. No. 25-04093-mar

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (ECF No. ___) ("Motion"). The Court has reviewed the Motion, the brief in support, and the record, and is otherwise fully advised in the premises. The Court finds that there is no genuine issue of material fact and that Plaintiff is entitled to judgment as a matter of law.

**IT IS ORDERED** that:

1. The Motion is granted as to Count 1 (11 U.S.C. § 523(a)(2)(A)) and Count 3 (11 U.S.C. § 523(a)(6)) of the Complaint.

2. Plaintiff Ratnesh Mehra is awarded a money judgment against Defendant Brandon Heitmann in the amount of $421,670.00.

3. The debt owed by Defendant Brandon Heitmann to Plaintiff Ratnesh Mehra in the amount of $421,670.00 is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

4. Count 2 of the Complaint (11 U.S.C. § 523(a)(4)), which Plaintiff has withdrawn, is dismissed.

5. The Court will enter a separate judgment consistent with this Order.

# Exhibit 2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

BRANDON HEITMANN,

Chapter 7
Case No. 24-41956-MAR
Hon. Mark A. Randon

Debtor.
_______________________________________/

RATNESH MEHRA,

Plaintiff,

v.

Adv. Proc. No. 25-04093-mar

BRANDON HEITMANN,

Defendant.
_______________________________________/

**NOTICE OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPORTUNITY TO OBJECT**

Plaintiff, Ratnesh Mehra, has filed a Motion for Summary Judgment.

**Your rights may be affected.** **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in the motion or objection, or if you want the court to consider your views on the motion or objection, within **twenty-one (21) days** of the date of this notice, you or your attorney must:

1. File with the court a written response or an answer[1], explaining your position at:

**United States Bankruptcy Court**
**211 West Fort Street**
**Detroit, Michigan 48226**

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

If you mail your response to the court for the filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also send a copy to:

Jeffrey H. Bigelman, Esq.
OSIPOV BIGELMAN, P.C.
20700 Civic Center Drive, Suite 420
Southfield, MI 48076

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the matter and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought and may enter an order granting that relief.**

Respectfully Submitted,
**OSIPOV BIGELMAN, P.C.**

DATED: November 16, 2026

/s/ Jeffrey H. Bigelman
JEFFREY H. BIGELMAN (P61755)
Attorneys for Plaintiff
20700 Civic Center Drive, Ste. 420
Southfield, MI 48076
Phone: (248) 663-1800 Fax: (248) 663-1801
Email: jhb@osbig.com

# Exhibit 3

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiff is entitled to summary judgment on Count 1 of the Complaint, where the undisputed record establishes that Defendant obtained money from Plaintiff by false pretenses, false representations, and actual fraud concerning his licensure, his ability to obtain building permits, and his experience, so that the resulting debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

   Plaintiff answers: Yes.

2. Whether Plaintiff is entitled to summary judgment on Count 3 of the Complaint, where the undisputed record establishes that Defendant willfully and maliciously injured Plaintiff and his property, so that the resulting debt is nondischargeable under 11 U.S.C. § 523(a)(6).

   Plaintiff answers: Yes.

3. Whether Plaintiff is entitled to a money judgment against Defendant in the amount of $421,670.00.

   Plaintiff answers: Yes.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Statutes and Rules**

11 U.S.C. § 523(a)(2)(A)

11 U.S.C. § 523(a)(6)

Fed. R. Civ. P. 56

Fed. R. Bankr. P. 7056

M.C.L. § 339.601(1)

M.C.L. § 339.2404a

M.C.L. § 339.2411(2)(j)

**Cases**

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)

Cohen v. de la Cruz, 523 U.S. 213 (1998)

Field v. Mans, 516 U.S. 59 (1995)

Husky Int'l Elecs., Inc. v. Ritz, 578 U.S. 355 (2016)

Hall v. Tollett, 128 F.3d 418 (6th Cir. 1997)

Longo v. McLaren (In re McLaren), 3 F.3d 958 (6th Cir. 1993)

Markowitz v. Campbell (In re Markowitz), 190 F.3d 455 (6th Cir. 1999)

Rembert v. AT&T Universal Card Servs., Inc., 141 F.3d 277 (6th Cir. 1998)

Semaan v. Allied Supermarkets, Inc., 951 F.2d 718 (6th Cir. 1991)

Mellon Bank, N.A. v. Vitanovich (In re Vitanovich), 259 B.R. 873 (B.A.P. 6th Cir. 2001)

Monsanto Co. v. Trantham (In re Trantham), 304 B.R. 298 (B.A.P. 6th Cir. 2004)

Willens v. Bones (In re Bones), 395 B.R. 407 (Bankr. E.D. Mich. 2008)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRANDON HEITMANN,

Debtor.

Chapter 7
Case No. 24-41956-MAR
Hon. Mark A. Randon

_____________________________________/

RATNESH MEHRA,
Plaintiff,
v.
BRANDON HEITMANN,

Defendant.

Adv. Pro. No. 25-04093-mar

_____________________________________/

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, Ratnesh Mehra, by and through his attorneys, OSIPOV BIGELMAN, P.C., and for his Brief in Support of Plaintiff's Motion for Summary Judgment, states as follows:[1]

## I. Background

### A. Brandon Heitmann.

Brandon Heitmann is currently 33 years old. Heitmann Deposition at 9:4-5.[2] His work experience was limited to pizza restaurants (Jet's Pizza, Serrano's Pizza, and Cloverleaf Pizza), two landscaping companies. Heitmann Deposition at 11:1-

[1] Plaintiff is proceeding on Count 1 (11 U.S.C. § 523(a)(2)(A)) and Count 3 (11 U.S.C. § 523(a)(6)). Plaintiff is not proceeding on Count 2 (11 U.S.C. § 523(a)(4)), as stipulated on the record at Plaintiff's deposition.

[2] Brandon Heitmann's deposition transcript from June 3, 2026, is attached hereto as **Exhibit A**. It will be referenced as "Heitmann Deposition at _:_".

13:3. In April 2017, he formed Exigent Landscaping, LLC ("Exigent"), which did lawn maintenance, landscaping, and hardscaping, and he was its sole owner. Heitmann Deposition at 13:4-14:25, 18:23-19:1. Before he went into the pool business in 2020, he had no experience building pools:

> Q. Prior to starting in the pool business during COVID,
> what prior experience did you have building pools?
> **A. None; and by that, I mean hands-on stuff, you know,**
> **just research.**

Heitmann Deposition at 18:19-22. That research was "YouTube. A lot of YouTube." Heitmann Deposition at 58:15-22.

> Q. I think you're missing the point of my question. What
> did you look at to research? Did you take a formal
> class? Did you read a book? Did you go -- like, what
> did you do?
> **A. I would say YouTube. A lot of YouTube.**
> Q. Okay.
> **A. I don't know of any class that exists, to be honest,**
> **building a pool, but a lot of research on YouTube.**

Heitmann Deposition at 58:15-22. Mr. Mehra's pool was one of Heitmann's first few pool jobs. Heitmann Deposition at 22:2-20.

Heitmann lacked a residential builder's license when the contract was executed on May 14, 2020, and Exigent had no qualifying licensed officer on file with the State of Michigan. Heitmann Deposition at 23:14-16, 24:6-9; ECF No. 18, RFA 3. He did not receive a residential builder's license until March 28, 2023, nearly three years later, and that license is now suspended for the very same fraud he

committed here upon other homeowners. ECF No. 18, RFA 9; Heitmann Deposition at 46:20-47:3; **Exhibit N**.

**B. Mr. Mehra.**

Dr. Mehra is a neurosurgeon. Mehra Deposition at 8:14-15.[3] Before this project he had no experience in construction or remodeling of any kind. Mehra Deposition at 8:19-25. In 2020, Mr. Mehra contracted with Ideal Builders and Remodeling, Inc. ("Ideal") to purchase a home Ideal was building at 232 Forest Avenue, Royal Oak, Michigan ("Property"). Mehra Deposition at 9:10-19.

**C. Heitmann Holds Himself Out as a Licensed and Experienced Pool Builder.**

Mr. Mehra found Exigent online while the house was under construction. Exigent's website displayed photographs of completed projects and stated that Exigent was licensed and insured. Mehra Deposition at 14:13-24. That representation was "partially the reason that we hired him." Mehra Deposition at 19:7-10.

Exigent's website also held Exigent out as experts in pool construction. An archived capture of the Exigent Design & Build website from November 30, 2021, describes the company as "Your Interior and Exterior Experts" and as "a full design

[3] Ratnesh Mehra's deposition transcript from August 28, 2026, is attached hereto as **Exhibit D**.

& build indoor and outdoor construction company specializing in hardscape construction and pools”:[4] and **Exhibit O**.

Before the Contract was signed, Mr. and Mrs. Mehra met with Heitmann and his wife, Amanda, inside the home and asked Heitmann directly whether he was licensed:

> Q. To the best of your recollection, exactly what did Brandon say? The words, the actual words that he said.
>
> **A. I don’t know the exact words. I do recall my wife and I asking him if he was licensed and insured, and he stated yes, he is licensed and insured.**

Mehra Deposition at 24:7-11; see also Mehra Deposition at 20:18-23, 23:10-24:6. Heitmann gave the same answer on a Zoom call before the Contract was signed. Mehra Deposition at 21:21-23, 25:19-26:22.

Heitmann also showed Mr. Mehra photographs of pools he said he had built, and told Mr. Mehra that Exigent could build each feature the Mehras wanted, including the automatic cover, the coping, the filtration system, and a <u>hot tub that could be used in the winter</u>. Mehra Deposition at 32:21-24, 38:7-12, 203:16-17. This representation was also false as the hot tub did not have plumbing independent of the pool to allow for winter useage.

---

[4]**Exhibit O** (Internet Archive capture of www.exigentdesignbuild.com, November 30, 2021. The capture post-dates the May 14, 2020 Contract; it is offered to show how Heitmann and Exigent held themselves out to the public (Complaint ¶10) and to rebut Heitmann’s testimony about the website’s content, not as the page Mr. Mehra viewed before signing.

Heitmann does not deny any of this; he does not remember what he told the Mehras about his experience. Heitmann Deposition at 25:9-14, 37:22-25. And he admits he did nothing to correct Mr. Mehra's belief that he was an expert:

> Q. So going back to the first message, Mr. Mehra writes, "I will leave it to your expertise"; right?
> **A. Yes.**
> Q. He thought you were an expert in pool building, and you did nothing to correct that, that you weren't an expert; correct?
> MR. FARRAJ: Objection. Form and foundation.
> Go ahead. You can answer.
> THE WITNESS: Correct.

Heitmann Deposition at 92:15-24 and **Exhibit L** at page 3. Heitmann also admits that the Mehras were told they would be able to use the hot tub in the winter. Heitmann Deposition at 76:22-77:2.

**D. Estimate, Contract, and Change Orders.**

On May 6, 2020, Heitmann sent Mr. Mehra a Landscaping Estimate. **Exhibit I**. On May 14, 2020, Mr. Mehra entered into a contract with Exigent, drafted by Exigent, to build a swimming pool, spa, outdoor kitchen, and related improvements at the Property ("Contract"). **Exhibit B**; ECF No. 18, RFA 1. Through ten change orders ("Change Orders"), the price increased from $308,395.70 to $466,255.70. **Exhibit C**; ECF No. 18, RFA 4, 7. Mr. Mehra paid the full $466,255.70, partly through Ideal and partly directly to Exigent. Mehra Deposition at 65:9-19, 66:7-13, 99:19-100:5. Because Ideal owned the Property while the pool was being built, it

was concerned about construction liens and required that the money pass through it at the beginning of the project. Mehra Deposition at 192:5-11; Heitmann Deposition at 39:3-40:6.

Michigan law requires contractors to include their residential builder's license information as a part of their contracts. M.C.L. § 339.2404a. The bottom of every page of the Estimate, the Contract, and the Change Orders purported to be a residential builder's license number, wherein it stated "**License #: 802082183**". ECF No. 18, RFA 5; Mehra Deposition at 51:17-21, 55:7-12, 71:8-11.

Heitmann acknowledged that it was not a residential builder's license. Heitmann Deposition at 22:21-23:16; see also ECF No. 18, RFA 6. Mr. Mehra noticed the number and relied on it: "I recall pointing out specifically, look, there's a license number. And then we both felt very good about that." Mehra Deposition at 53:9-13.

The Estimate and the Contract also charged Mr. Mehra for building permits: a line item for "permits and engineering plans for the city pool" and a provision charging for any additional permits needed during the project. **Exhibit I** at Bates 253, 261; **Exhibit B** at pages 3, 13; Mehra Deposition at 186:7-187:24. The night before the Contract was signed, Heitmann texted Mr. Mehra that he would "start

pulling permits tomorrow," but he had no ability to do so.[5] Asked whether he could pull permits, he answered, "Not without Hank." Heitmann Deposition at 84:24-85:8.

> at May 13, 2020, a text message from you. "Awesome. Looking forward to it. Want to get together tonight to sign the docs, get down payment, and I'll start pulling permits tomorrow." Do you see that?
> **A. Yep.**
> Q. You wrote that; right?
> **A. Looks like it, based on what you're showing me.**
> Q. You personally had no ability to pull permits, did you?
> **A. Not without Hank.**

Heitmann Deposition at 84:24-85:8 and **Exhibit L** at page 11. Heitmann admitted that a residential builder's license was required to obtain a building permit for the scope of work in the Contract. ECF No. 18, RFA 2.[6]

Heitmann never told Mr. Mehra that he was unlicensed or that he would obtain permits under someone else's license. Mehra Deposition at 188:7-15. Heitmann agrees. Heitmann Deposition at 25:2-8, 38:1-5.

## E. Heitmann Obtains Building Permits on Hank Bell's License.

To get around the licensing requirement, Heitmann used a third party's, Henry (Hank) Bell of Construction Contractors, residential builder's license to obtain building permits. Heitmann admitted that he applied for all three Royal Oak permits

---

[5]Heitmann confirmed that his phone number is 586-802-9690 and that he exchanged the text messages with Mr. and Mrs. Mehra. Heitmann Deposition at 81:14-82:5, 95:16-22.

[6]Heitmann later supplemented this response to "admitted in part," contending that landscaping and hardscaping did not require a license. ECF No. 41, RFA 2. The supplement does not dispute that a license was required to obtain the permits for the swimming pool and outdoor kitchen, which are the permits at issue.

for the Property, PB20-00683 (gunite swimming pool), PB20-00748 (outdoor kitchen), and PB20-01775, in the name of Construction Contractors using Hank Bell's residential builder's license. ECF No. 18, RFA 11, 13, 15; **Exhibit G**. Hank Bell testified that he did not apply for any of the permits, did not pay for them, and did not authorize Heitmann or anyone else to use his license: Bell Deposition at 17:6-12; see also Bell Deposition at 8:5-6, 20:24-21:6, 22:22-23:9, 24:14-19, 34:14-19. Both Mehra and Heitmann testified that Heitmann never disclosed before or during contract negotiations that he lacked a builder's license or would be operating under Hank Bell's license, and the contract made no reference to Bell or Construction Contractors, Inc. Heitmann Deposition at 25:2-8 and 38:1-5.

Hank Bell has never met Mr. Mehra, has never been to the Property, never saw the Contract or the Change Orders, and did no work on the project. Bell Deposition at 11:13-17, 12:2-15, 14:6-15:23, 35:20-36:7. <u>Neither Bell or his company has ever built a swimming pool</u>. Bell Deposition at 47:15-20; see also Bell Deposition at 7:11-21.

Heitmann's discovery responses falsely assert that he "performed work under the knowledge and supervision of Construction Contractor's LCC." ECF No. 18, RFA 3, **Exhibit P**. Hank Bell testified that he had no knowledge and supervised nothing. Bell Deposition at 35:13-16.

The City of Royal Oak's records show that the permit application was submitted online under the web username "BHeitmann12," with the phone number 586-383-8308 and the e-mail address BHeitmann12@yahoo.com. **Exhibit H**; Bell Deposition at 25:4-24. None of that contact information is Hank Bell's; the e-mail is Heitmann's and the phone number was his business number. Bell Deposition at 25:17-24; Heitmann Deposition at 45:7-46:5.[7]

Heitmann claims that Hank Bell authorized him to use his license and that the authorization is in text messages. Heitmann Deposition at 36:5-23, 54:18-22. The only such messages produced are the January 2021 messages addressed in note 7, which post-date the applications. Heitmann shared no income from the project with Bell. Heitmann Deposition at 54:23-25. As discussed below, whether Bell consented is immaterial.

**G. The Swimming Pool Fails.**

The pool appeared to be completed in December 2020, when the Mehras moved in. Mehra Deposition at 184:18-21. However, as it was winter, it could not be determined whether it was completed without defect. Within months it was leaking and losing tile and finish. In May 2021, the Mehras reported that the pool

---

[7]The day before Hank Bell's deposition, Heitmann produced text messages dated January 8-22, 2021, purportedly from Hank Bell's phone, forwarding a photograph of permit PB20-01775 and a Royal Oak letter stating that a final inspection was needed. Bell Deposition at 27:14-30:22. Hank Bell does not recall the exchange and the messages are not on his phone. Bell Deposition at 30:19-31:20. Even taken at face value, the messages post-date the issuance of the first two permits (June 24 and July 13, 2020) and the October 7, 2020 application for the third, and show only that paperwork reached Hank Bell after the fact. Bell Deposition at 24:3-7, 33:1-34:13.

was losing water to below the tile line, and Heitmann responded, “Fantastic news, we found the leak. Very easy fix.” Heitmann Deposition at 95:23-96:24. Tiles and glass beads continued to fall off the pool, and the beads were drawn into the equipment. Heitmann Deposition at 61:2-4, 80:6-13, 98:3-22.

Regarding the automatic cover, Heitmann wrote on March 8, 2022, “I realized it was a mistake on my end,” and he confirmed it at his deposition. Heitmann Deposition at 99:17-100:17. In July 2023, more than three years after the Contract, Heitmann wrote, “I plan to have all the permits finaled out in the next 30 days. Plaster, I’m willing to redo for the entire pool.” Heitmann Deposition at 82:6-83:10 and **Exhibit L** at page 158. Neither happened.

None of the three permits was ever finaled: one was canceled and two expired. **Exhibit G**; Heitmann Deposition at 42:2-44:9; Bell Deposition at 18:8-12, 19:20-21, 20:10-12, 23:18-19.[8] After the summer of 2023 the pool could not be used at all. Mehra Deposition at 181:23-182:2.

Mr. Mehra contacted Antonelli Pools (“Antonelli”). Mick Gadzinski, a part owner of Antonelli, assessed the pool without knowing who had built it. Gadzinski Deposition at 6:17-18, 9:10-15.[1] He is a licensed residential builder and Pool & Hot Tub Alliance member, has built close to 200 pools, and has never been sued or

[8] Heitmann testified that rough inspections were passed. Heitmann Deposition at 111:3-8. No final inspection was ever obtained. Heitmann Deposition at 44:4-9.

had a warranty claim on a pool he built. Gadzinski Deposition at 7:12-19, 63:5-10, 66:14-24[9]. He found leaks at every return line but one, wrapping around the entire pool, something he had never seen; the plumbing could not be repaired without tearing up the entire deck. Gadzinski Deposition at 21:11-18.

He also found hollow, bowing walls in the pool shell; a glass-bead finish that was shedding and that any installer would know would fail in a Michigan winter; a spa built inside the pool that could not be used in the winter, as the Mehras had been promised; and an automatic cover that was not square, with coping out of level by two to two-and-a-half inches. Gadzinski Deposition at 22:21-23:20, 50:17-51:2, 52:9-12, 70:2-10, 73:23-74:12. When the pool was drained, the slope from the shallow end to the deep end exceeded the code maximum:

> tearing it down. What made -- it was to my surprise
> actually when I did drain the whole pool, one thing
> that's illegal -- is **an illegal pool was the slope from**
> **the shallow end to the deep end exceeded the 3 foot to**
> **one foot ratio**; so it was -- yeah so I told them if you
> want -- if you want it to pass inspection, which you
> wouldn't, and have a legal pool you would have to redo
> the whole floor of the pool. So that led to the whole
> floor, all the walls, all the plumbing. There was no
> saving that pool.

Gadzinski Deposition at 32:10-19. The slope limit exists to prevent children from drowning. Gadzinski Deposition at 77:21-78:5. Mr. Gadzinski summarized: "I never seen so much damage of a pool that was that new." Gadzinski Deposition at 30:22-

[9] Mick Gadzinski's deposition transcript from October 6, 2026, is attached hereto as **Exhibit F**. Antonelli's August 28, 2023 Pool Assessment, disclosed as Plaintiff's expert report, is attached hereto as **Exhibit J**.

24. When the pool was demolished, the broken piping, cracked shell, and crumbling concrete confirmed his assessment. Gadzinski Deposition at 78:13-79:17.

Maintenance did not cause the pool to fail. Improper maintenance can affect only the plumbing, water chemistry, and equipment, not the pool shell, and the pool's condition and need for replacement were entirely construction-related. Gadzinski Deposition at 79:18-80:6. Exigent performed the initial maintenance and winterized the pool, and Mr. Mehra then engaged Huntington Pool and Spa for weekly maintenance. Mehra Deposition at 180:11-181:16; Heitmann Deposition at 76:11-21.

Heitmann did not disclose an expert, and his own opinions on causation require specialized knowledge outside the scope of lay testimony. FRE 701(c). Mr. Gadzinski's opinions are unrebutted.

**H. The Pool Is Demolished and Rebuilt.**

Antonelli demolished Heitmann's pool and built a new one. Mehra Deposition at 100:21-101:1; Gadzinski Deposition at 21:19-22:13. Removing the pool required heavy equipment that destroyed the surrounding decking, and the fence, arborvitae, and retaining wall had to come down for access. Gadzinski Deposition at 68:20-69:23, 75:4-12; Mehra Deposition at 206:1-207:15. Mr. Mehra paid Antonelli $421,670.00 to demolish Heitmann's work and deliver what Exigent had contracted to deliver. Mehra Deposition at 100:8-13; **Exhibit K**.

When added to the amount already paid to Exigent ($466,255.70), Mr. Mehra paid $887,925.70 to obtain a swimming pool that Exigent had contracted to build for $466,255.70, resulting in excess costs of **$421,670.00**.[10]

**I. Mr. Mehra Is Not the Only Person Heitmann Has Defrauded.**

Heitmann's conduct here was his routine practice.[11] He used Hank Bell's license on every pool job he did before Mr. Mehra's, and Bell has been sued by other Exigent customers because Heitmann used Bell's license, without his knowledge, to obtain their permits. Heitmann Deposition at 15:22-17:18; Bell Deposition at 9:6-21.

In June 2024, Heitmann and Exigent stipulated to two consent orders with the Michigan Board of Residential Builders and Maintenance and Alteration Contractors, in which they did not contest the allegations and the Board found that they had violated, among other provisions, MCL 339.601(1) (engaging in a licensed occupation without a license), MCL 339.2404a (license information in contracts), and MCL 339.2411(2)(j) (allowing one's license to be used by an unlicensed person).[12] **Exhibit M**; Heitmann Deposition at 48:13-52:13. Heitmann's license was suspended as a result. Heitmann Deposition at 52:14-16.

---

[10]Plaintiff seeks the excess cost to obtain what Exigent contracted to deliver, which is the amount pleaded in the Complaint. Plaintiff does not seek to recover both the amount paid to Exigent and the amount paid to Antonelli.

[11]FRE 404(b)(2); FRE 406.

[12]In each stipulation, Heitmann and Exigent agreed not to contest the allegations without admitting their truth, and agreed that the Board could treat them as true and enter an order doing so. **Exhibit M**, Stipulation ¶1.

## J. Summary of Heitmann's Representations.

## 1. Licensure and Permits

| What Heitmann Represented | When and How | The Truth | Record |
|---|---|---|---|
| "Licensed and insured." | In person, on a Zoom call, and on Exigent's website, before the Contract was signed | Neither Heitmann nor Exigent had a residential builder's license. Heitmann was not licensed until March 28, 2023. | Mehra Dep. 24:7-11, 14:13-24, 19:7-10, 21:21-23, 25:19-26:22; ECF No. 18, RFA 3, 9; Heitmann Dep. 23:14-16 |
| "License #: 802082183" | Bottom of every page of the May 6, 2020 Estimate, the May 14, 2020 Contract, and all ten Change Orders | Not a residential builder's license, or a license of any kind. | Exhibits B, C, I; ECF No. 18, RFA 5, 6; Heitmann Dep. 22:21-23:4; Mehra Dep. 51:17-21, 53:9-13 |
| Exigent would obtain the building permits, for which Mr. Mehra was charged; "I'll start pulling permits tomorrow." | Estimate and Contract line items; May 13, 2020 text | Heitmann could not legally obtain a permit: "Not without Hank." | Exhibits B, I; Mehra Dep. 186:7-187:24; Heitmann Dep. 84:24-85:8; ECF No. 18, RFA 2 |
| Construction Contractors, on Hank Bell's residential builder's license, was the permit applicant. | Permit applications to the City of Royal Oak for PB20-00683, PB20-00748, and PB20-01775 | Bell did not apply, pay, supervise, or ever meet Mr. Mehra; the applications were submitted under username "BHeitmann12" with Heitmann's e-mail and phone number. | Exhibits G, H; ECF No. 18, RFA 11, 13, 15; Bell Dep. 17:6-12, 25:4-24, 35:13-16; Heitmann Dep. 45:7-46:5 |
| Silence: no disclosure that Heitmann was unlicensed or was using Bell's license. | Throughout negotiation and performance of the Contract | Michigan law required Heitmann to provide his license information as part of the Contract. | M.C.L. § 339.2404a; Mehra Dep. 188:7-15; Heitmann Dep. 25:2-8, 38:1-5 |

**2. Experience**

| What Heitmann Represented | When and How | The Truth | Record |
|---|---|---|---|
| Photographs of pools Heitmann said he had built. | In person, before the Contract was signed | Mr. Mehra's pool was one of Heitmann's first few pool jobs. Before 2020 he had no hands-on experience building pools. | Mehra Dep. 32:21-24, 203:16-17; Heitmann Dep. 18:19-22, 22:2-20 |

| What Heitmann Represented | When and How | The Truth | Record |
|---|---|---|---|
| Exigent could build the automatic cover, coping, filtration, and a hot tub usable in winter. | In person, before the Contract was signed | Heitmann learned from "a lot of YouTube"; his only hands-on training was installing one fiberglass pool, and he was never trained to build a concrete pool. The spa as built could not be used in winter. | Mehra Dep. 38:7-12; Heitmann Dep. 58:15-22, 60:11-19, 76:22-77:2; Gadzinski Dep. 50:17-51:2 |

## II. Standard of Review

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See generally* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code provides: (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt-- . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-- (A) false pretenses, a false representation, or actual

fraud, other than a statement respecting the debtor's or an insider's financial condition[.] 11 U.S.C. § 523(a)(2)(A).

False representation

The elements of a § 523(a)(2)(A) claim based on a false representation are: "(1) the debtor obtained money [property, services, or an extension, renewal, or refinancing of credit] through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." Willens v. Bones (In re Bones), 395 B.R. 407, 430 (Bankr. E.D. Mich. 2008)(quoting Rembert v. AT&T Universal Card Servs., Inc., 141 F.3d 277, 280-81 (6th Cir. 1998)).

False pretenses

The phrase "false pretenses" has been defined this way: "A 'false pretense' involves an implied misrepresentation or conduct intended to create or foster a false impression. A false pretense has been defined to include a 'mute charade,' where the debtor's conduct is designed to convey an impression without oral representation." Schafer v. Rapp (In re Rapp), 375 B.R. 421, 433 (Bankr. S.D. Ohio 2007) (quotation marks and citation omitted). It has also been described as "usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction...."

Evans v. Dunston (In re Dunston), 117 B.R. 632, 641 (Bankr. D. Colo. 1990), aff'd in part and rev'd in part on other grounds, 146 B.R. 269 (D. Colo. 1992). The failure to disclose a material fact can form the basis of either a material misrepresentation or false pretense. See Semaan v. Allied Supermarkets, Inc., 951 F.2d 718, 728 (6th Cir. 1991) ("That such deception takes the form of an intentional nondisclosure of a material fact or an implied representation makes no difference."). A debtor's silence may also "create a false impression which would be actionable under § 523(a)(2)(A)...." Brann v. Oxford (In re Oxford), 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010) (citation omitted). Hermoyian, 466 B.R. at 377.

Actual fraud

"Actual fraud is broader than misrepresentation." Mellon Bank, N.A. v. Vitanovich (In re Vitanovich), 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001). [A]ctual fraud encompasses "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." . . . When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code. Vitanovich, 259 B.R. at 877.

A corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation.'" People v Brown, 239 Mich. App. 735, 739-740;

610 N.W.2d 234 (2000), quoting Attorney General v Ankersen, 148 Mich. App. 524, 557; 385 N.W.2d 658 (1986).

**C. 11 U.S.C. § 523(a)(6)**

Section 523(a)(6) states that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). In order to establish nondischargeability under § 523(a)(6), a creditor must show an injury to person or property by the debtor that is both "willful" and "malicious." "[T]o find a 'willful' injury under § 523(a)(6), [the court] must determine either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." Monsanto Co. v. Trantham (In re Trantham), 304 B.R. 298, 307 (6th Cir. BAP 2004) (citing Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 464 (6th Cir. 1999)). "Under § 523(a)(6), '[m]alicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." Id. at 308 (quoting Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986)).

## III. Application of Law to Facts

### A. Count 1- Section 523(a)(2)(A)

Section 523(a)(2)(A) provides three independent grounds for nondischargeability: false representations, false pretenses, and actual fraud. Sterling, 479 B.R. at 449. The facts summarized in Section I.J establish each. Heitmann's express statements were false representations; his conduct and concealment, taken as a whole, were false pretenses; and his scheme to evade Michigan's licensing law was actual fraud. The remaining elements of intent, justifiable reliance, and causation are common to all three and are addressed once, in subsection 4.[13]

#### 1. False Representations

Heitmann made three express misrepresentations, each false when made. First, he told Mr. Mehra, in person and on Zoom, that he was licensed and insured. Mehra Deposition at 21:21-23, 24:7-11. He was not. ECF No. 18, RFA 3, 9; Heitmann Deposition at 23:14-16. Second, he put "License #: 802082183" on every page of the Estimate, the Contract, and all ten Change Orders. ECF No. 18, RFA 5. It is not a license of any kind. ECF No. 18, RFA 6; Heitmann Deposition at 22:21-23:4. Third, he represented that Exigent would obtain the building permits and

[13] These representations are pleaded in the Complaint at ¶¶10, 21, 25, and 45, and Defendant examined Plaintiff on each of them at his deposition. Mehra Deposition at 19:7-31:4, 138:21-149:15.

charged Mr. Mehra for them. **Exhibit I**; **Exhibit B** at pages 3, 13; Heitmann Deposition at 84:24-85:8.

Heitmann knew each representation was false. Heitmann Deposition at 22:21-23:16, 84:24-85:8. Heitmann does not dispute Mr. Mehra's testimony about what Heitmann told him; he claims he does not remember. Heitmann Deposition at 25:9-14, 37:22-25. A party opposing summary judgment "must identify specific facts" supported by the record "that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). A lack of recollection identifies none. The representations were material. A residential builder's license is the threshold qualification Michigan requires to build a pool, and Heitmann admits a license was required to obtain the permits. M.C.L. § 339.601(1); Heitmann Deposition at 23:5-13.

**2. False Pretenses**

Apart from his express statements, Heitmann's conduct created and fostered the impression that Mr. Mehra was dealing with a licensed, qualified pool builder who would build a permitted pool. See Dunston, 117 B.R. at 641. Heitmann put a number that was not a license under the label "License number" and repeated it on every document he gave Mr. Mehra for the life of the project. He had a statutory duty to provide his license information as part of the Contract, M.C.L. § 339.2404a, and instead said nothing about having no license or about using Bell's. Mehra

Deposition at 188:7-15; Heitmann Deposition at 25:2-8, 38:1-5. He applied for the permits in the name of Bell's company, on Bell's license, under his own username, e-mail, and phone number, so that the City's records showed a licensed builder where there was none. **Exhibits G, H**; Heitmann Deposition at 45:7-46:5. He showed Mr. Mehra photographs of pools he said he had built, and when Mr. Mehra wrote, "I will leave it to your expertise," did nothing to correct him, though Mr. Mehra's pool was one of his first and his training came from YouTube. Mehra Deposition at 32:21-24; Heitmann Deposition at 18:19-22, 22:2-20, 58:15-22, 92:15-24.

Together, these acts conveyed that a licensed builder stood behind the work, when none did. Bell Deposition at 35:13-16, 47:15-20.

**3. Actual Fraud**

Actual fraud does not require a misrepresentation. Husky Int'l Elecs., Inc. v. Ritz, 578 U.S. 355, 359-60 (2016). Heitmann's design was to circumvent Michigan's licensing requirement: obtain permits on Bell's license that the City would not otherwise issue, while giving customers a license number so they would have no reason to ask. He used Bell's license on every pool job before Mr. Mehra's, and on the Boyd, Carter, and Habecca projects, and the State of Michigan suspended his license for doing so. Heitmann Deposition at 15:22-17:18; Bell Deposition at 9:6-21, 26:6-12. Heitmann's claim that Bell consented does not change the analysis.

Consent or not, the borrowed license was the artifice, allowing one's license to be used by an unlicensed person is itself a violation, M.C.L. § 339.2411(2)(j), and Heitmann concealed it from Mr. Mehra. Heitmann Deposition at 25:2-8, 36:5-23, 38:1-5.

**4. Intent, Justifiable Reliance, and Causation**

Intent. Intent to deceive is measured subjectively and may be inferred from the totality of the circumstances. Rembert, 141 F.3d at 281-82. Heitmann's only response is his assertion that he "did not intend to knowingly mislead or purport false information." ECF No. 18, RFA 6. That assertion identifies no specific facts showing a genuine issue for trial. Hall, 128 F.3d at 422. The number on every page, the concealment of the borrowed license, the use of his own contact information on another builder's permit applications, and the same conduct on other customers' projects leave no innocent explanation.

Justifiable reliance. Mr. Mehra asked Heitmann directly whether he was licensed, was told yes, and then saw a license number on every page of the documents Heitmann gave him. Mehra Deposition at 24:7-11, 53:9-13. Nothing about the documents suggested the number was false, and Mr. Mehra was not required to look it up. *Field v. Mans*, 516 U.S. 59, 70-72 (1995). He would not have hired Heitmann otherwise:

> Q. (By Mr. Bigelman) Why was one of the first questions you asked whether he was licensed?
> **A. We would not have proceeded if he wasn't.**
> Q. So if he would have been honest with you that he was not a residential licensed builder, you would have gone with somebody else and we would never be sitting here.
> MR. EYRE: Objection, form, foundation.
> **A. That's correct.**

Mehra Deposition at 194:6-13; see also Mehra Deposition at 89:10-16, 94:15-24, 203:18-204:1. Nor would he have hired Heitmann had he known that Heitmann learned to build pools from YouTube:

> Q. When he was soliciting your business, did he tell you he had learned how to build pools by watching YouTube?
> **A. No.**
> Q. And if he said that, what would you have done?
> MR. EYRE: Objection, foundation, calls for speculation.
> **A. I would not have used him.**

Mehra Deposition at 200:6-12; see also Mehra Deposition at 204:14-18.

Causation and damages. But for these representations, pretenses, and the scheme behind them, Mr. Mehra would not have contracted with Exigent. The pool Heitmann built could not be repaired and had to be demolished and rebuilt. Gadzinski Deposition at 21:11-18, 30:22-24, 32:10-19, 78:13-79:17. It cost Mr. Mehra $421,670.00 more than the contract price to obtain what Exigent contracted to deliver. Section 523(a)(2)(A) reaches all liability arising from the fraud, Cohen v. de la Cruz, 523 U.S. 213, 218-23 (1998), and this Court may enter a money judgment for that amount. *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965-66 (6th Cir. 1993). Heitmann made the representations himself, signed the Contract and Change

Orders, and submitted the permit applications, and is personally liable. Brown, 239 Mich. App. at 739-740.

**B. Count 3- Section 523(a)(6)**

There is no reasonable dispute that Heitmann's actions as described herein were both willful and malicious. The State of Michigan has laws and rules in place to protect homeowners from unqualified and unlicensed residential builders.[14] Heitmann's actions were willful because he knew that a residential builder's license was required for the work he contracted to perform on behalf of Exigent, and that he could not obtain a building permit without deceiving the City of Royal Oak by using Hank Bell's license. Without a license, Heitmann avoided the supervision and inspection the licensing and permitting process exists to provide. He then took $466,255.70 from Mr. Mehra to build a gunite pool, although he had no hands-on experience building pools before 2020, had never been trained to build a gunite pool, and had learned what he knew from "[a] lot of YouTube." Heitmann Deposition at 18:19-22, 58:15-22, 60:11-19; Mehra Deposition at 65:9-19, 66:7-13, 99:19-100:5.

A pool builder's knowledge, not the subcontractors, determines whether a pool is built correctly. Gadzinski Deposition at 67:15-68:6. The defects that followed were not unforeseeable: any installer would know the glass-bead finish would fail in

[14]MCL 339.601(1), MCL 339.604(d), MCL 339.604(h), MCL 339.2404a, MCL 339.2411(j), and MCL 339.2411(m).

a Michigan winter, the spa as built could not do what Heitmann promised, and the slope violated a code provision that exists to prevent drowning. Gadzinski Deposition at 50:17-51:2, 70:2-10, 77:21-78:5; Heitmann Deposition at 76:22-77:2. It was substantially certain that the pool would fail. Heitmann's actions were also malicious, as he disregarded his duties and obligations under the occupational code for residential builders, without just cause or excuse.

**Conclusion**

There is no genuine issue of material fact, and the Plaintiff is entitled to judgment as a matter of law (a) awarding him a money judgment against Defendant Brandon Heitmann in the amount of $421,670.00, and (b) determining that the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

Dated: November 16, 2026

Respectfully Submitted,
**OSIPOV BIGELMAN, P.C.**

/s/ Jeffrey H. Bigelman
JEFFREY H. BIGELMAN (P61755)
Attorneys for Plaintiff
20700 Civic Center Drive, Ste. 420
Southfield, MI 48076
(248) 663-1800
jhb@osbig.com

# Exhibit 4

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

BRANDON HEITMANN,

Chapter 7
Case No. 24-41956-MAR
Hon. Mark A. Randon

Debtor.
_______________________________________/

RATNESH MEHRA,

Plaintiff,

v.

Adv. Proc. No. 25-04093-mar

BRANDON HEITMANN,

Defendant.
_______________________________________/

## CERTIFICATE OF SERVICE

RE: Plaintiff's Motion for Summary Judgment, Brief in Support, Proposed Order, Notice, Certificate of Service, Exhibit List, and Exhibits

I hereby certify that on November 16, 2026, I electronically filed the foregoing documents with the Clerk of the Court using the Court's CM/ECF System, which will send electronic notification of such filing to all parties listed by the court as receiving electronic notices in this case from the court's CM/ECF system registered on the ECF System, including:

**Notice will be electronically mailed to:**

Jeffrey H. Bigelman on behalf of Plaintiff Ratnesh Mehra
jhb_ecf@osbig.com, tc@osbig.com;mk@osbig.com

Douglas W. Eyre on behalf of Defendant Brandon Heitmann
deyre@kotzsangster.com, tbradford@kotzsangster.com

Anthony James Miller on behalf of Plaintiff Ratnesh Mehra
am@osbig.com

Jeffrey M. Sangster on behalf of Defendant Brandon Heitmann
jsangster@kotzsangster.com, lpfund@kotzsangster.com;mdelorme@kotzsangster.com

Respectfully Submitted,
**OSIPOV BIGELMAN, P.C.**

DATED: November 16, 2026

/s/ Jeffrey H. Bigelman
JEFFREY H. BIGELMAN (P61755)
Attorneys for Plaintiff
20700 Civic Center Drive, Ste. 420
Southfield, MI 48076
Phone: (248) 663-1800 Fax: (248) 663-1801
Email: jhb@osbig.com

# Exhibit 5

# Exhibit 6

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

| | |
|---|---|
| BRANDON HEITMANN, | Chapter 7<br>Case No. 24-41956-MAR<br>Hon. Mark A. Randon |
| Debtor.<br>_______________________________________/ | |
| RATNESH MEHRA,<br>Plaintiff,<br>v.<br>BRANDON HEITMANN, | Adv. Pro. No. 25-04093-mar |
| Defendant.<br>_______________________________________/ | |

**INDEX OF EXHIBITS TO**
**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| Exhibit | Description |
|---|---|
| A | Deposition Transcript of Brandon Heitmann, June 3, 2026 |
| B | Contract between Exigent Landscaping, LLC and Ratnesh Mehra, May 14, 2020 |
| C | Change Orders 1–10 to the Contract |
| D | Deposition Transcript of Ratnesh Mehra, August 28, 2026 |
| E | Deposition Transcript of Henry (Hank) Bell, May 14, 2026 |
| F | Deposition Transcript of Mick Gadzinski, October 6, 2026 |
| G | City of Royal Oak Building Permits PB20-00683, PB20-00748, and PB20-01775 |
| H | City of Royal Oak Permit Application Records (FOIA Production) |
| I | Exigent Landscaping Estimate, May 6, 2020 |
| J | Antonelli Pools Pool Assessment, August 28, 2023 |

| Exhibit | Description |
|---|---|
| K | Antonelli Pools Contract and Proof of Payments Totaling $421,670.00 |
| L | Text Messages between Brandon Heitmann and Ratnesh Mehra |
| M | Stipulations and Consent Orders, Michigan Board of Residential Builders and Maintenance and Alteration Contractors, June 2024 |
| N | State of Michigan (LARA) License Record for Brandon Heitmann |
| O | Internet Archive Capture of www.exigentdesignbuild.com, November 30, 2021 |
| P | Defendant's responses to Plaitniff's discovery requests (ECF No. 18) |