UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 24-41956-MAR |
| BRANDON HEITMANN, | Hon. Mark A. Randon |
| Debtor. | |
| _____________________________/ | |
| RATNESH MEHRA, | |
| Plaintiff, | Adv. Proc. No. 25-04093-mar |
| v. | |
| BRANDON HEITMANN, | |
| Defendant. | |
| ____________________________/ | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Brandon Heitmann, by and through his attorneys, Kotz Sangster Wysocki P.C., hereby moves this Court for an Order granting its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056 and rely upon the facts as set forth in its Brief filed concurrently herewith.

Respectfully submitted,

**KOTZ SANGSTER WYSOCKI P.C.**

By: */s/ Douglas W. Eyre*
Douglas W. Eyre (P63068)
*Attorneys for Defendant*
400 Renaissance Center, Suite 3400
Detroit, MI 48243
313-259-8300
deyre@kotzsangster.com

Dated: November 16, 2026

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>BRANDON HEITMANN,<br><br>Debtor.<br>_________________________/ | Chapter 7<br>Case No. 24-41956-MAR<br>Hon. Mark A. Randon |
| RATNESH MEHRA,<br><br>Plaintiff,<br>v.<br><br>BRANDON HEITMANN,<br><br>Defendant.<br>_________________________/ | Adv. Proc. No. 25-04093-mar |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, I electronically filed and served Defendant's Motion For Summary Judgment, Defendant's Brief In Support of Its Motion For Summary Judgment, and this Certificate of Service in accordance with the Court's Electronic Filing Guidelines using the CM/ECF Filing System, which will send notification of such filing to those who are currently on the list to receive email notices for this case.

I declare under the penalty of perjury that the foregoing statement is true to the best of my information, knowledge and belief.

By: *Terri A. Bradford*
Terri A. Bradford

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>BRANDON HEITMANN,<br><br>Debtor.<br>_______________________/ | Chapter 7<br>Case No. 24-41956-MAR<br>Hon. Mark A. Randon |
| RATNESH MEHRA,<br><br>Plaintiff,<br>v.<br><br>BRANDON HEITMANN,<br><br>Defendant.<br>_______________________/ | Adv. Proc. No. 25-04093-mar |

# DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## *I. Introduction:*

The Court should discharge any debt owed to Ratnesh Mehra ("Mehra") related to the pool constructed by Exigent Landscaping, LLC and Defendant/Debtor Brandon Heitmann ("Heitmann") because Mehra cannot withhold unplead allegations until his deposition and he has no evidence establishing Heitmann claimed to have a **residential builder's** license, or that any alleged misrepresentation was the proximate cause of Mehra's loss. The undisputed evidence shows Heitmann intended to deliver a satisfactory pool, hired competent

subcontractors, and worked 2 ½ years repairing any issues raised by Mehra. Mehra's claimed damages arise solely from Exigent's failure to deliver a satisfactory pool. This is a simple breach-of-contract dispute over the build quality of a residential swimming pool. Debts arising from this kind of dispute are dischargeable.

## *II. Material Facts:*

The material facts are summarized below and are supported by the attached exhibits. These include Mehra's Adversary Complaint[1], the Contract between Mehra and Exigent[2], Change Orders #1–10[3], deposition testimony (**Exhibits 4 thru 7**), the Achieved Website Images (**Exhibit 8**), sworn affidavit of Brandon Heitmann (**Exhibit 9**), and other documentary evidence (**Exhibits 10 thru 12**).

### A. The Parties.

Mehra is an individual who owns real property located at 232 Forest Ave, Royal Oak, Michigan (the "Property").[4] At all relevant times, Heitmann was the resident agent, president, and sole managing member of Exigent Landscaping LLC ("Exigent").[5]

---

[1] **Exhibit 1**, Complaint.
[2] **Exhibit 2**, Contract.
[3] **Exhibit 3**, Change Orders #1–10.
[4] *Id.* ¶ 4
[5] *Id.* ¶ 6.

## B. The Bankruptcy Proceedings.

On or about August 7, 2023, Exigent filed a voluntary Chapter 11 petition in this District, commencing Case No. 23-46912-tjt before the Honorable Thomas J. Tucker. On or about February 12, 2024, the case was converted to Chapter 7.[6] On or about February 29, 2024, Heitmann filed his own voluntary Chapter 13 petition, commencing Case No. 24-41956-mar.[7] On or about February 25, 2025, Heitmann converted his case to Chapter 7.[8] On May 27, 2025, Mehra commenced this adversary proceeding. In the present action Mehra seeks a ruling that the amounts he claims are owed for the Project are non-dischargeable under two 11 U.S.C. § 523 theories.

## C. The Contract and Change Orders.

On or about May 14, 2020, Mehra and Exigent entered into a contract for the construction of a custom swimming pool at the Property (the "Contract").[9] The initial Contract price was $308,395.70, which increased to $466,255.70 via Change Order nos. 1-10.[10] The Contract Documents do not state  Exigent or Heitmann held a residential builder's license.

---

[6] *Id.* ¶ 7.
[7] *Id.* ¶ 8.
[8] *Id.* ¶ 9.
[9] **Exhibit 2**, Contract.
[10] **Exhibit 3**, Change Orders.

## D. Mehra Has Not Shown a Representation of Licensure Was Ever Made.

Mehra's Complaint alleges a misrepresentation because Exigent's LARA Registration Number was printed at the bottom of the Contract Documents and contains a vague argument that broadly asserts that Heitmann and Exigent "held themselves out to the world as contractors who were licensed and competent to build and install custom swimming pools."[11] Anyone reading the Complaint would assume that allegation referenced the license number in the Contract Documents. For the first time, in his deposition, Mehra alleged Heitmann orally affirmed he was "licensed and insured" and that Exigent's website stated "licensed and insured," but Mehra cannot identify the context of the website statement or the specific statement, speaker, date, place, or the manner in which any alleged oral representation was communicated.[12]

Mehra acknowledges Heitmann never represented he or Exigent held a residential builder's license.[13]

## E. Construction of the Pool and the Parties' Dispute.

---

[11] **Exhibit 1**, at ¶ 10, Owen v. Angst (In re Angst), 428 B.R. 776, 30 (Bankr. N.D. Ohio 2010).
[12] **Exhibit 1**, Complaint.
[13] **Exhibit 4**, Mehra Dep. at 53:24-54:1-4.

Exigent actually constructed a pool. Mehra fully paid, and when Mehra complained about the quality, Heitmann tried to repair the issue.[14] Heitmann does not dispute there were issues with the quality of the pool. But, Mehra contends his damages are for the defective pool and he cannot identify any damages arising from the alleged misrepresentation.

## *III. Applicable Legal Standards:*

### A. Summary Judgment

Bankruptcy Rule 7056 incorporates Fed.R.Civ.P. 56, which states, in pertinent part:

> "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

Parties asserting whether or not there is a genuine dispute of material fact, must cite to:

> "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A).

The movant bears the initial burden of showing the trial court the absence of a genuine issue of material fact.[15] Once a *prima facie* showing has been made, the

---

[14] Exhibit 4, Mehra Dep. at 99:19-100:1-13.

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

burden shifts to the opposing party, which cannot rely merely upon allegations and denials in the pleadings. The opposing party must show that there is a genuine issue to be resolved by the trier of fact.[16]

**B. 11 U.S.C. §§ 523(a)(2) and 523(a)(6)**

Mehra stipulated on the record he was only proceeding under Counts I and III.[17] Count I is based on 11 U.S.C. § 523(a)(2)(A):

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by —
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

Count III is based on 11 U.S.C. § 523(a)(6) which states:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

## *IV. Law and Argument:*

This Court should grant summary judgment in favor of the Defendant and against Mehra because:

(A) Mehra's Complaint Does Not Plead Fraud With Particularity, and Mehra Cannot Amend It Through His Eleventh-Hour Deposition

---

[16] Id. at 323.
[17] **Exhibit 4**, Mehra Dep. at 136:16–19.

(B) Mehra Failed to Produce Adequate Records Demonstrating That Heitmann is Liable for False Pretenses, False Representations, and Actual Fraud under 11 U.S.C. § 523(a)(2)(A)

(C) Heitmann is Not Liable for Willful and Malicious Injury Under 11 U.S.C. § 523(a)(6).

**A. Mehra Cannot Amend His Complaint with Eleventh-Hour Deposition Disclosures**

Fraud claims under § 523(a)(2)(A) are subject to Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009, which requires a party alleging fraud to "state with particularity the circumstances constituting fraud."[18] Plaintiff must (1) identify the specific time, place, and content of the alleged misrepresentation; (2) the fraudulent scheme and fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud."[19] The purpose of the rule is to put defendant on notice of "the particulars of the allegations against them so they can intelligently respond," to prevent "fishing expeditions," and "to whittle down potentially wide-ranging discovery to only relevant matters."[20]

The Complaint does not disclose Mehra's claims of oral misrepresentation or the alleged written misrepresentation on Exigent's website. Reading the Complaint,

---

[18] Sequatchie Mt. Creditors v. Lile, 585 B.R. 426 (N.D. Ohio 2018); Stoner v. Keirns (In re Keirns), 628 B.R. 911 (Bankr. S.D. Ohio 2021).
[19] Heritage Collegiate Apparel, Inc. v. Elemental Cap., Inc. (In re Heritage Collegiate Apparel, Inc.), 676 B.R. 773 (Bankr. E.D. Mich. 2026) (quoting Gold v. Winget (In re NM Holdings Co., LLC), 407 B.R. 232, 258 (Bankr. E.D. Mich. 2009)).
[20] Chesbrough v. VPA, P.C., 655 F.3d 461, 466–67 (6th Cir. 2011).

it appears the misrepresentations alleged by Exigent and Heitmann were based soley on the "License #: 802082183" on the bottom of the Contract Documents, and that Heitmann and Exigent misrepresented the ability to pull permits, and having sufficient skill and competency.[21] Permits were pulled and never impacted construction.[22] Telling someone you can complete a job is puffery. Nothing in the allegation "Heitmann and Exigent held themselves out to the world as contractors who were licensed and competent to build and install custom swimming pools," or that Heitmann and Exigent "falsely represented" licensure provides any notice of an alleged oral misrepresentation or an alleged statement on Exigent's website. There is no allegation of an oral statement, speaker, date, place, Zoom, or website.[23]

Mehra introduced entirely new fraud theories in deposition, taken immediately before discovery cutoff.[24] Mehra did not disclose these allegations in his Complaint, his Initial Disclosures, or his Interrogatory Responses.[25] Even Mehra's new allegations lacked specificity.[26] He could not identify the date, words, speaker of any conversation, only that Heitmann answered "yes" to the compounded

---

[21] **Exhibit 1**, Complaint at ¶¶ 10, 17, 45.

[22]

[23] **Exhibit 1**, Complaint.

[24] Exhibit 4, Mehra Dep. at 137:3–14, 139:6–10, 141:9–13, 147:1–11; and 148:13–14. **Exhibit 10**, Scheduling Order and **Exhibit 4**, Mehra Dep at 1.

[25] **Exhibit 1**, Complaint; **Exhibit 11,** Plaintiff's Initial Disclosures; and **Exhibit 12,** Plaintiff's Interogatory Responses.

[26] **Exhibit 4**, Mehra Dep. at 20:18–23, 21:13–23, 23:1–26:3.

question of whether Heitmann was "licensed and insured."[27] He could not state the number of Zoom calls the parties had, which call included licensure representations, or whether it occurred before or after signing the Contract, offering only an assumptive statement that it "would have" preceded the Contract.[28] Mehra's website theory lacks the identity of where on the site the words appeared, whether "licensed and insured" was a banner or included in a sentence.[29] Moreover, Mehra has no evidence to support either claim and the closest contemporaneous archive of Exigent's webpage (as well as every other subsequent archive) does not contain a representation of being "licensed and insured."[30]

If Mehra wanted to proceed on the allegations absent from his Complaint, the proper course would be to seek leave to amend under Rule 15(a), not wrongly attempt to supplement claims using unsupported allegations levied in Plaintiff's own deposition.[31] If its withheld allegations are true, Mehra had knowledge of them, long before he filed suit in 2025. Yet he never moved to amend or attempt to cure the defect in his discovery responses. His interrogatory answers referred generally to a "first meeting" and to unspecified "oral representations" regarding experience and

---

[27] Id. at 23:14–20, 24:7–20, 26:19–27:13.
[28] Id. at 25:2–26:3.
[29] Id. at 14:17–24, 18:7–19:10.
[30] **Exhibit 8**, Archived Website Images.
[31] Id.

skill, without any date, place, words, or medium, and with no mention of Zoom or the website. Before this suit, Mehra never complained to Heitmann or Exigent, by email or text, that Exigent had held itself out as a licensed residential builder.[32]

Allowing Mehra to proceed on unplead oral representations disclosed at the close of discovery would defeat the very purpose of Rule 9(b). Heitmann had no notice of these theories, was denied the opportunity to depose Mehra's wife and preserve or seek records of Exigent's website and the Zoom sessions. The Court should limit Mehra to the fraud actually pleaded, the number on the Contract. Regardless, for the reasons below, Mehra's claims of fraud fail on the merits.

### B. Mehra Failed to Produce Adequate Records Demonstrating Heitmann is liable for false pretenses, false representations, and actual fraud under 11 U.S.C. § 523(a)(2)(A)

Heitmann did not represent he possessed a valid Michigan residential builder's license.[33]

#### 1. Mehra fails to prove each element of fraud, and exceptions to such a discharge are strictly construed in Heitmann's favor

To discharge a debt under §523(a)(2)(A), a creditor is required to prove that "(1) the debtor obtained money through a material misrepresentation that, at the time,

---

[32] **Exhibit 4**, Mehra Dep. at 112:14–22, 117:13–16.
[33] **Exhibit 4**, Mehra Dep. 53:1-4, 53:5-8, 54:7-12, 155:10-16, 155:17-24, and 148:10-13. **Exhibit 9**, Heitman Affidavit.

the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss."[34] Each of the elements must be proven by a preponderance of the evidence.[35] "[T]he court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor."[36]

The *Rembert* test requires a showing that Heitmann obtained the contract monies through a material misrepresentation that, at the time, Heitmann knew was false or made with gross recklessness as to the truth. However, the record does not meet such a standard.

The primary written statement Mehra relies on is the line "License Number: 802082183" listed in the Contract. The number was Exigent's LARA identification number, a real identifier, not a fabricated license number.[37] Mehra admits the Contract does not state the words "residential builder's license" and Heitmann did not tell him "License Number: 802082183" was Exigent's or his residential builder's

---

[34] Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert), 141 F.3d 277, 280–81 (6th Cir. 1998).
[35] Grogan v. Garner, 498 U.S. 279, 291 (1991); Wildwood Prop., L.L.C. v. Rauf (In re Rauf), 504 B.R. 838 (Bankr. E.D. Mich. 2014).
[36] Bldg. Commc'ns, Inc. v. Rahaim (In re Rahaim), 324 B.R. 29 (Bankr. E.D. Mich. 2005).
[37] **Exhibit 5**, Heitmann 9-3-24 Dep at 38:17-24.

license number, Heitmann never showed him any documents claiming he possessed a builders license, and he never asked Heitmann for his builders license number.[38]

Mehra alleges Exigent's website stated "licensed and insured"[39] There is no evidence supporting that contention. The most contemporaneous screenshots of Exigent's website are approximately one year after the parties entered into the contract and do not include any representation of licensure.[40]

Mehra cannot give the date, exact words, or who asked whether Exigent was "licensed and insured," only that Heitmann answered "yes" to the question. [41] Stating that Brandon "stated yes" to the two-part question of "are you licensed and insured," is not indicative of a knowing falsehood regarding Exigent holding a residential builder's license when Exigent did in fact hold insurance and a LARA business license identification number.[42]

*Rembert* requires a subjective showing Heitmann intended to deceive Mehra. Intent is determined by the totality of the circumstances establishing a debtor meant to mislead, not merely acted with carelessness or a mistake.[43] Mehra has no such

---

[38] **Exhibit 4**, Mehra Dep. at 53:24–54:8, 55:7–12, and 156:10–24.
[39] **Exhibit 4**, Mehra Dep. at 14:17–24.
[40] **Exhibit 8**, Archived Website Images.
[41] **Exhibit 4**, Mehra Dep. at 23:14–20, 24:7–20, and 26:19–22.
[42] Id.
[43] In re Wentland, 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009).

evidence. Heitmann put Exigent's actual LARA identification number on all of his contracts, including all contracts for landscaping work for which no residential builders' license was required.[44] He was unaware doing so might be read as claiming a residential builder's license.[45] More importantly, Exigent did not secure payment without building a pool. Mehra concedes Exigent completed all the contract work by December 2020, and dedicated significant time and resources attempting to address quality concerns raised Mehra in 2021 and 2022.[46] Furthermore, Mehra admitted he cannot say what Heitmann was thinking, and that it's " possible that [Heitmann] intended to [build the pool] well."[47]. Heitmann listed his actual LARA business identification number on the contract documents, giving substantial credence to the notion that Heitmann would have listed a wholly fabricated license number had he intended to defraud Mehra.[48], Mehra's personal speculation the number listed on the contract was part of some grand "scheme" holds no weight, nor is it evidence of intent. Because the exceptions to discharge under §523 must be strictly construed in the debtor's favor, this element fails factually and as a matter of law.[49]

---

[44] **Exhibit 6**, Heitmann 6-3-26 Dep at 26:1-25.
[45] **Exhibit 9**, Heitman Affidavit.
[46] **Exhibit 4**, Mehra Dep. at 79:7–8, 102:23–103:3, and 184:18–21.
[47] Id. at 173:22–174:5.
[48]In re Bozzano, 173 B.R. 990, 994–95 (Bankr. M.D.N.C. 1994).
[49] Rembert, 141 F.3d at 281.

*Rembert* requires Mehra justifiably rely on an alleged false representation.[50] While a debtor has no duty to investigate the licensure of every contractor he in his employ, it has been established in the Eastern District that a debtor "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.".[51] Mehra entered into a contract for more than $400,000. He never asked to see a physical builders license, he never asked whether the number on the contract documents was a residential builder's license number, and he made no attempt search the State's license records, even though he admitted that he knew of a way to verify licensure using LARA.[52] The number on the Contract was not labeled as a residential builder's license, and Mehra never asked about it.[53] In fact, Mehra continued to pay for Heitmann's work, accepted the completed work, and even asked Exigent for repairs over the course of several years without ever once raising the issue of licensure.[54] Moreover, after his experience with Exigent, he did nothing to

---

[50] Rembert, 141 F.3d at 280–81; Lenchner v. Korn (In re Korn), 567 B.R. 280 (Bankr. E.D. Mich. 2017).
[51] Willens v. Bones (In re Bones), 395 B.R. 407 (Bankr. E.D. Mich. 2008)
[52] **Exhibit 4**, Mehra Dep. at 54:1–4, 155:6–13, 156:17–24.
[53] Id. at 54:5–8.
[54] Id. at 109:5–8, 112:14–22, 117:13–16.

confirm Antonelli was licensed.[55] Mehra's actions show licensure was not what motivated Mehra's decisions.

Mehra must show reliance the alleged false representation was the proximate cause of the loss.[56] Section 523(a)(2)(A) allows for the discharge of debt "obtained by…fraud," and requires a "a direct link between the alleged fraud and the creation of the debt." [57] It excludes harm which would have happened absent the alleged misrepresentation.[58] Here, Mehra's claimed damages are solely the result of poor workmanship, not whether Exigent had a residential builders' license. Mehra claims he is entitled to the full $466,255.70 paid to Exigent plus $421,670 paid demolish and fully rebuild the pool.[59] A residential builder's license does not require any experience, training, education, or testing on pools.[60] Many of these costs relate to elements of work for which no builders' license is required. Mehra was unable identify which portions of his damages calculation stemmed from the lack of a licensure or from the defective work, simply stating the two were "intertwined."[61]

---

[55] **Exhibit 4**, Mehra Dep. at 155:6–13 and 156:7–9.
[56] Rembert, 141 F.3d at 280–81.
[57] In re Hermoyian, 466 B.R. 348, 370 (Bankr. E.D. Mich. 2012).
[58] In re Hermoyian, 466 B.R. 348, 370 (Bankr. E.D. Mich. 2012).
[59] **Exhibit 4**, Mehra Dep. at 98:13–17, 100:2–13. Of course, this would be an impermissible windfall as Mehra would receive a free pool, but it exemplifies the irrationality of Mehra's claims.
[60] **Exhibit 7,** Gadzinski Dep. at 35:3-36:21.
[61] Id. at 97:18–98:8.

He also was unable to identify any damage that he would have suffered had Heitmann completed the work properly.[62] All of Mehra's damage are based on the quality of the work performed – not on any alleged misrepresentation. Without evidence tying a specific loss to the alleged misrepresentation, rather than to Exigent's performance under the Contract, Mehra cannot establish proximate cause.

### C. Heitmann is not liable for willful and malicious injury under 11 U.S.C. § 523(a)(6).

Pursuant to Section 11 U.S.C. § 523(a)(6), a willful and malicious injury can only be established if the creditor can show that the "debtor (1) desires to cause the consequences of his act, or (2) believes those consequences are substantially certain to result from it."[63] Furthermore, the conjunctive nature of the word "and" as it is used in 523(a)(6) indicates that "willful" must be analyzed independently from "malicious", as both elements must be proven separately to establish the nondischargeability of debt.[64]

#### 1. Mehra cannot establish Heitmann Willfully caused injury as required under § 523(a)(6)

A willful injury is done with the intent to cause the injury. Meaning, the requisite intent exists when the debtor desires to cause the consequences of his act,

---

[62] Id

[63] In re Amine, 619 B.R. 192, 198 (E.D. Mich. 2020).

[64] Knochel v. Ronan, 670 B.R. 496, 503 (E.D. Mich. 2024).

or believes that the consequences are substantially certain to result from it.[65] It requires a debtor commit a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[66] There is no evidence Heitmann intended anything other than building a pool for Mehra.

Mehra alleges his injury is the entire amount paid Exigent and the entire cost to rebuild the pool.[67] To prevail, Mehra must show that Heitmann intended to receive Mehra's money without building the pool, or, he was substantially certain a working pool would not result.[68] Here, a simple or willful breach of contract does not constitute a "willful and malicious injury".[69] Because the record shows that Exigent attempted to complete all of the work under the contract and change orders, completed the pool in 2020, diligently attempted to fix only problems with the pool, and later maintained and winterized the pool, Mehra cannot prove Heitmann intended to cause a willful injury[70] Furthermore, Mehra conceded that he "wouldn't happen to guess to know what was in Brandon Heitmann's mind," and that it was

---

[65] In re Fox, 370 B.R. 104, 119 (Bankr. App. 6th Cir. 2007).
[66] Id.
[67] **Exhibit 1**, Complaint at ¶42, and **Exhibit 4**, Mehra Dep. at 98:13–17, 100:2–13.
[68] Steier v. Best (In re Best), 109 F. App'x 1, 8 (6th Cir. 2004).
[69] Id.
[70] **Exhibit 4**, Mehra Dep. at 79:7–8, 180:18–181:2, 181:3–13, and 173:22–174:5.

"possible that they intended [build the pool] well", further undercutting any argument that Heitmann acted with an intent to injure.[71]

Even viewed in the light most favorable to Mehra, there is no genuine dispute, Heitmann intended to build a satisfactory pool, and thought he could complete a satisfactory pool working with qualified subcontractors and a contractor qualified to pull permits. Heitmann did not possess willful intent to injure or think that injury was substantially likely.

**2. Mehra cannot establish Heitmann maliciously caused injury**

"Malicious actions are those that are "wrongful and without just cause or excuse."[72] Malice does not require ill will or specific intent, but it does address "whether the debtor had a legal justification or legal excuse for the otherwise culpable conduct, or acted in conscious disregard of one's duty.[73] The Sixth Circuit established "a debtor may act willfully, but not maliciously."[74]

Courts in Michigan's Eastern District have held breaches of commercial contracts are not conduct synonymous with malice, "a party may intentionally breach a

---

71

72 Market Graphics Rsch. Grp., Inc. v. Berge, 953 F.3d at 915 (citing Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012); see also Yeager v. Wilmers, 553 B.R. 102, 107 (S.D. Ohio 2015)).

73 In re Boland, 596 B.R. 532, 546 (Bankr. App. 6th Cir. 2019).

74 *Berge*, 953 F.3d 907 (citing *Olmstead v. Newman (In re Newman)*, 385 B.R. 799 (B.A.P. 6th Cir. 2008).

contract with the knowledge that an injury may result, but the nature of the injury is in large part foreseeable and assumed as a part of the risk of doing business. The injury is real, but it is not 'malicious' in the sense that it deserves exception from discharge under the Bankruptcy Code."[75]

The record does not show a conscious disregard of duty on Heitmann's part. Exigent performed its obligations on the Project and repeatedly made house calls to make warranty repairs.[76] Exigent hired qualified subcontractors to perform most of the pool work, including many of the same who worked on the replacement pool as subcontractors to Antonelli.[77] There can be no reasonable dispute Exigent and Heitmann made every effort to build the pool it contracted to build, and actually believed it could do so. The number at the bottom of the contract documents was Exigent's real LARA identification number.[78] Additionally, the permits for the pool and other outdoor structures were issued to a licensed contractor Heitmann thought had agreed to work with him.

---

[75] In re Haynes, 19 B.R. 849 (Bankr. E.D. Mich. 1982).
[76] **Exhibit 4**, Mehra Dep. at 79:7–8, 102:23–103:3, 184:18–21.
[77] **Exhibit 6**, Heitmann 6-3-26 Dep. at 30:14-25, 58:23-59:12 and 65:21–66:1. **Exhibit 7**, Gadzinski Dep. at 67:7–22 and 68:7-13.
[78] **Exhibit 5**, Heitman 9-3-24 Dep. at 116:13-22.

Therefore, because Mehra has not and cannot show that Heitmann acted with a conscious disregard of his duties or without just cause or excuse, the malice element also fails.

**D. Request for Relief**

Mehra cannot establish the elements of any of his claims under 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(6). Defendant-Debtor Brandon Heitmann therefore respectfully asks this Court to:

1) Grant his Motion for Summary Judgment in full under Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056;

2) Enter judgment in his favor on Counts I, II, and III of the Adversary Complaint;

3) Declare that any debt owed to Plaintiff Ratnesh Mehra in connection with the Project is dischargeable;

4) Dismiss this adversary proceeding with prejudice; and

5) Grant any other relief the Court finds just and equitable.

Respectfully submitted,

Dated: November 16, 2026

*/s/ Douglas W. Eyre*
**KOTZ SANGSTER WYSOCKI, P.C.**
Douglas W. Eyre (P63068)
*Attorneys for Defendant*
400 Renaissance Center, Suite 3400
Detroit, MI 48243
313-259-8783
deyre@kotzsangster.com